(No. 63238.)

*In re* BASIL CHRIS ELIAS, Attorney, Respondent.

*Opinion filed October 1, 1986.—Rehearing denied December 1, 1986.*

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte and David J. Walker, of William J. Harte, Ltd., of Chicago, for respondent.

JUSTICE MORAN delivered the opinion of the court:

On April 17, 1984, the Administrator of the Attorney Registration and Disciplinary Commission filed a four-count complaint against respondent, Basil Chris Elias.

Count I of the complaint alleged that respondent failed to deposit clients' settlement proceeds into a trust account established for that purpose. It also alleged that respondent commingled and converted funds properly belonging to his clients by depositing these funds into one of five nontrust accounts; by drawing on the funds so deposited to pay personal and business expenses; and by permitting these accounts to be overdrawn on a routine basis. Each of the foregoing allegations was cited as a violation of Disciplinary Rules 9—102(a) and (b) of the Code of Professional Responsibility (94 Ill. 2d Rules 9—102(a), (b)). Count I further charged respondent with dishonesty, fraud, deceit, and misrepresentation in connection with his use of clients' funds deposited in these

accounts in violation of Disciplinary Rule 1—102(a)(4) (87 Ill. 2d R. 1—102(a)(4)). Count II made the same allegations with respect to a bank account opened and controlled by respondent but established and maintained in the name of an attorney associated with his practice. Thus, under counts I and II, respondent was charged with commingling and converting funds with regard to a total of six different accounts.

Counts III and IV related to specific clients. Count III alleged commingling and conversion of funds belonging to Mary K. Rooney in violation of Rules 9—102(a) and (b). It also charged that respondent failed to maintain records, render an accounting, and distribute promptly the proceeds of the settlement negotiated on Rooney's behalf in violation of subsection (c) of Rule 9—102 (94 Ill. 2d R. 9—102(c)). Additionally, count III charged dishonesty, fraud, deceit, and misrepresentation in distributing to Rooney her share of the negotiated settlement. Count IV realleged the foregoing charges with respect to respondent's client Fred Roll.

Respondent filed an answer on July 24, 1984, and an amended answer on October 30, 1984. His amended answer admitted the factual allegations contained in the complaint but denied that these facts constituted commingling or conversion of clients' funds. He further denied engaging in any conduct which could be deemed fraudulent or deceitful.

This matter came before the Hearing Board on January 28 and April 11, 1985. The Administrator introduced numerous exhibits, over respondent's objection, purporting to detail respondent's disposition of funds belonging to clients which, according to the Administrator, amounted to commingling, conversion, fraud, and deceit as charged in the complaint. Respondent testified before the Board, denying all allegations of wrongdoing.

The facts are not in dispute. Respondent is a sole

practitioner concentrating his practice in the area of personal injury. Between 1977 and 1982, respondent opened and maintained six bank accounts. These accounts bore names as follows: Basil C. Elias Attorney at Law Clients Fund Account (Heritage Bank of Oak Lawn); Basil C. Elias Attorney at Law Account (First State Bank of Alsip); Kenneth R. LeVey and Basil C. Elias Attorney at Law Account (LeVey was an associate of respondent); Geraldine Keim Clients Fund Account (Keim was respondent's secretary-bookkeeper during this time—not an attorney); Joseph N. Lascaro Attorney at Law Account (Lascaro was an associate of respondent); and Prairie States Petroleum Company, Inc. Account (respondent was president of Prairie States during this period). When respondent received a check in settlement of a client's personal injury claim, it was deposited into one of these six accounts. Respondent then issued a check to the client representing the client's share of the settlement check. Sometimes respondent's check was postdated. On other occasions, respondent's check bore the date on which it was given to the client.

The check given the client was drawn on one of the above named accounts but not necessarily on the account into which the settlement check had been deposited. On at least eight occasions, respondent's check was dishonored due to insufficient funds when presented for payment. One of these instances involved Mary K. Rooney, the subject of count III of the complaint. Rooney received a post-dated check and held the check until the date indicated, at which time she deposited it in her checking account. Respondent's check was dishonored, causing several of Rooney's checks to be dishonored. Several days later, Rooney received a cash payment along with an additional $40.

The record further reveals at least five other occasions on which respondent's checks were dishonored

when presented. The specific reason for the dishonor of these checks does not appear in the record.

The record indicates that most of these checks were paid upon re-presentment, although two of the checks were dishonored on second presentment. The record does not show how respondent settled with the clients involved in these two cases.

The record also reveals that respondent disbursed funds from all six accounts in payment of personal and business expenses. Illustrative of disbursements for personal expenses are checks issued to gambling casinos in Nevada and New Jersey in various amounts ranging from $7,000 to $50,000. Other disbursements for personal expenses include checks issued to respondent and members of his family and checks drawn to cash. There were also disbursements for business expenses such as payments to Commonwealth Edison, Illinois Bell Telephone, People's Gas, the clerk of the circuit court of Cook County, and the post office. Other checks were issued to Prairie States Petroleum Company.

The record further reveals that large sums of money were deposited into these accounts. For example, during 1984, the bank statements for one of these accounts, the Basil C. Elias Attorney at Law Clients Fund Account, showed the total deposits for the year to be in excess of $3 million.

The Hearing Board issued its report and recommendation on January 24, 1986. It found that respondent maintained several different bank accounts in various names; that respondent deposited checks received by him in settlement of his clients' claims into these accounts; that he disbursed funds from these accounts for personal purposes; and that these accounts were overdrawn on occasion. The Board further found that respondent's check to client Rooney had been dishonored due to insufficient funds but had been replaced with cash. It also

noted that the account on which respondent's check to client Roll had been issued was overdrawn prior to presentment.

The Hearing Board concluded that "[t]echnically, there would be a breach of ethics any time the balance in [r]espondent's bank account or accounts fell below the sum of all outstanding checks to clients." Referring specifically to count III involving Rooney and count IV involving Roll, it found that respondent failed to preserve the identity of their funds as required by Rule 9—102. The Board recommended that respondent be reprimanded and admonished to adhere strictly to the requirements of Rule 9—102 in his future transactions with clients.

The Administrator filed exceptions before the Review Board on January 27, 1986. On February 3, 1986, this court ordered that the Board expedite review. Thereafter, on March 7, 1986, the Review Board filed its report and recommendation.

This Board found that respondent had failed to maintain a clients' trust account for deposit of settlement proceeds prior to distribution to each client of his portion of the settlement as required by Rule 9—102(a). It found that these proceeds were deposited into accounts controlled by respondent which were used, in part, for his personal activities and business enterprises. The Board concluded that respondent had commingled clients' funds.

The Board also found, in its review of the documentary evidence, several instances in which checks given to clients by respondent had been dishonored for insufficient funds, requiring re-presentment or the issuance of a replacement check. It concluded that conversion had occurred in each of these cases. It also concluded that respondent's conduct in handling his clients' funds was fraudulent and deceitful in violation of Rule 1—102(a)(4).

The Review Board reversed the recommendation of the Hearing Board, recommending instead that respondent be disbarred. Respondent has filed exceptions to the report and recommendation of the Review Board in this court as provided by Supreme Court Rule 753(e)(5) (94 Ill. 2d R. 753(e)(5)).

Respondent's first exception is substantive. He contends that the Review Board erred in concluding that he violated Rule 9—102(a) because the funds in his possession were not funds belonging to his clients within the meaning of the rule and, therefore, the Board erred in concluding that he commingled and converted clients' funds. In the alternative, respondent claims error in that the Administrator failed to prove these allegations by clear and convincing evidence as required by our Rule 753(c)(6) (94 Ill. 2d R. 753(c)(6)).

Respondent also raises two procedural exceptions regarding his alleged violation of Rule 9—102(a). He maintains that the Hearing Board erred in admitting documentary evidence substantiating various transactions occurring in his bank accounts since he had admitted, in his amended answer, the factual allegations supported by these documents. He further contends that he was denied due process when the Review Board scrutinized the documentary evidence, uncovered a number of instances of dishonored checks issued to clients, and then proceeded to base its recommendation of disbarment on these incidents even though they were not specifically charged in the Administrator's complaint.

Respondent also raises exceptions to the conclusion of the Review Board that his pattern and practice of depositing and disbursing clients' funds constituted fraud and deceit under Rule 1—102(a)(4). He argues, first, that he did not violate the rule because all clients received their agreed-upon settlements and, hence, sustained no injury as a result of his conduct. Alternatively, he argues that

the Administrator failed to prove this allegation by clear and convincing evidence.

We first address respondent's assertion that he did not violate Rule 9—102(a) because the settlement proceeds he allegedly failed to segregate in a clients' trust account were not, in fact, funds belonging to clients.

Respondent, upon receiving a check in settlement of a client's claim, routinely issued either a current or postdated check to the client representing the client's share of the settlement check. As a result of this transaction, respondent argues that the settlement check ceased to represent funds belonging to the client within the meaning of Rule 9—102(a) at the moment he gave his check in "full payment" of the client's share of the check. According to respondent, physical receipt by the client of respondent's check extinguished all interests of the client in the settlement check. Because the client no longer had an interest in the check, respondent contends that he did not hold funds belonging, in whole or in part, to the client. Since he did not hold funds belonging to the client, respondent concludes that he was not required by Rule 9—102(a) to maintain a separate clients' trust account. Under these circumstances, he contends that Rule 9—102(a) does not apply to him.

Respondent also uses this theory to rebut the Administrator's charges of commingling and conversion. As noted, respondent argues that he ceased to be in possession of a client's funds at the moment he delivered his check to the client in "full payment" of the latter's interest in the settlement check. Where an attorney is not in possession of property belonging to a client, there is nothing which can be commingled or converted. Thus, respondent concludes that, as a matter of law, he cannot have commingled or converted clients' funds.

The Administrator disputes this theory. He argues that under Rule 9—102(a) all settlement checks issued to

or on behalf of an attorney's client are *per se* funds belonging, in whole or in part, to the client. Therefore, the rule mandates that all settlement checks be deposited into a separate, identified clients' trust account regardless of the time or manner of payment from attorney to client. According to the Administrator, Rule 9—102(a) is violated where, as here, an attorney receives funds on behalf of a client but fails to maintain a clients' trust account. The Administrator also argues that respondent has commingled and converted clients' funds where, as here, settlement checks, the proceeds of which belong at least in part to clients, were deposited into nontrust accounts regularly used to pay respondent's personal and business expenses and which were overdrawn on a number of occasions.

The plain language of Rule 9—102(a) is dispositive of respondent's first exception. Rule 9—102(a) provides:

"All funds of clients paid to a lawyer or law firm, including funds belonging in part to a client and *in part presently or potentially to the lawyer or law firm, shall be deposited* in one or more separate identifiable trust accounts in a bank or savings and loan association maintained in the State in which the law office is situated." (Emphasis added.) 94 Ill. 2d R. 9—102(a).

It is manifest that this provision is mandatory, admitting of no exceptions for any reason. Repeatedly, this court has held that the foregoing provision embodies an unambiguous requirement that an attorney must establish and maintain a separate, identifiable trust account into which any and all funds belonging, in whole or in part, to clients are to be deposited regardless of the manner in which an attorney chooses to handle final disbursement of these funds. *In re Cutrone* (1986), 112 Ill. 2d 261, 268; *In re Enstrom* (1984), 104 Ill. 2d 410, 417-18; *In re Cohen* (1983), 98 Ill. 2d 133, 139.

There is no question that the settlement checks re-

ceived by respondent belonged in part to his clients. Similarly, there is no question that respondent failed to establish and maintain a clients' trust account for these funds, thus violating both the letter and spirit of Rule 9–102(a). Further, respondent's admitted pattern and practice of depositing settlement proceeds into one of several nontrust accounts from which he would pay personal and business expenses clearly constitutes commingling of funds. Finally, as respondent also admits, while current and post-dated checks drawn on these accounts and issued to clients remained outstanding, these accounts would become overdrawn. On each such occasion, clients' funds were converted.

This court has observed on many occasions that failure to abide by the express, mandatory directive of Rule 9–102(a) often leads to commingling and conversion. (*In re Cohen* (1983), 98 Ill. 2d 133, 139; *In re Grant* (1982), 89 Ill. 2d 247, 253, *cert. denied* (1982), 459 U.S. 838, 74 L. Ed. 2d 80, 103 S. Ct. 84.) Strict compliance avoids this outcome and insures the safety and integrity of clients' funds while in the possession of an attorney. We therefore affirm the decision of the Review Board that the Administrator proved by clear and convincing evidence that respondent failed to maintain a clients' trust account in violation of Rule 9–102(a); commingled client funds with his own; and converted client funds to his own uses as alleged in each count of the complaint.

Respondent next raises a procedural objection to the admission of documentary evidence by the Hearing Board. The evidence to which respondent objects is composed of bank records pertaining to his nontrust accounts. Included in this evidence are records of deposit, checks written on accounts, notices of dishonor, and monthly statements.

Respondent argues that this evidence is inadmissible because he admitted in his amended answer virtually all

of the Administrator's factual allegations. In essence, he contends that his factual admissions meant that no facts remained in dispute. He maintains, therefore, that the documents were irrelevant, immaterial, cumulative, and prejudicial, and that for these reasons the Hearing Board erred in admitting them.

The Administrator counters by arguing that respondent's admissions do not go to the ultimate factual issues of this case. According to the Administrator, respondent did not admit that he violated Rule 9—102(a) by failing to maintain a clients' trust account nor did he admit that he commingled and converted clients' funds. The Administrator points out that respondent's amended answer expressly denied these ultimate facts. Since respondent's amended answer placed at issue ultimate facts of the case, the Administrator maintains that the documents proffered were relevant and properly admitted to resolve the issues contested by the respondent.

This court has adopted Rule 401 of the Federal Rules of Evidence, which defines relevance. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *People v. Monroe* (1977), 66 Ill. 2d 317, 322.

This definition, as noted in *Monroe*, encompasses the materiality of evidence as well as its probative value. (66 Ill. 2d 317, 322.) As applied to the record before us, it is clear that the documentary evidence proffered by the Administrator was both material and probative and, hence, admissible.

The evidence admitted plainly tends to make more probable than not the ultimate, but contested, issues of this case. For example, the documents tend to establish that respondent's several bank accounts were not in fact clients' trust accounts by showing the many transactions

relating solely to respondent's personal and business activities. Therefore, the documents tend to establish as more probable than not that respondent, despite denial, violated the mandate of Rule 9—102(a) by not maintaining a trust account. These documents also tend to demonstrate that respondent, despite denial, commingled his funds with those of his clients as shown by the many checks written on these accounts for respondent's personal and business expenses. Further, these documents reveal the many times respondent's accounts, into which he deposited clients' settlement checks, showed negative balances, thereby tending to establish, as more probable than not, that respondent, despite denial, converted clients' funds. Respondent's contention that the documentary evidence was irrelevant is therefore without merit.

Respondent's further contention that admission of this evidence was prejudicial is also without merit. Respondent himself placed in issue facts which put the Administrator to his proof. By contesting the Administrator's allegations that he violated various provisions of the Code of Professional Responsibility, respondent cannot be heard to complain that evidence tending to prove the allegations was prejudicial. The Administrator has the right to adduce evidence tending to prove his case to the same extent that respondent has the right to introduce evidence tending to prove his defenses. We find no prejudice where, as here, the evidence introduced tends to resolve factual matters in dispute. We hold that the Hearing Board properly admitted the documents proffered by the Administrator.

Respondent next contends that the Review Board violated his right to due process by basing its recommendation of disbarment on charges not contained in the Administrator's complaint. Respondent relies on *In re Ruffalo* (1968), 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222, for the proposition that an attorney cannot be dis-

ciplined on charges not contained in the original complaint against him.

*Ruffalo* is clearly distinguishable from respondent's situation. In *Ruffalo*, the sole basis for disbarment from the Federal bar was an additional charge added to the complaint after the attorney testified in his own behalf in an effort to refute the charges contained in the original complaint. The Supreme Court held that the attorney had been denied fair and adequate notice necessary to defend the new charge and that this lack of notice constituted a violation of due process. Unlike *Ruffalo*, respondent cannot allege that additional charges have been lodged against him such that he has been deprived of the fair and adequate notice needed to present a defense. The "charges" to which respondent alludes are not charges at all. They are illustrative of respondent's pattern and practice of commingling and conversion as charged in counts I and II of the Administrator's complaint. In challenging the actions of the Review Board, respondent is doing nothing more than attempting to label as new charges examples of transactions contained in the documentary evidence, properly admitted into the record, which support the allegations set out in counts I and II of the only complaint filed in this matter.

Our reading of counts I and II indicates that respondent was charged expressly with commingling and conversion with respect to each of six bank accounts controlled by respondent and named specifically by the Administrator. While these two counts did not contain the names of individual clients whose funds were commingled and converted, these counts, as drafted, put respondent on notice of the nature of the charges against him and certainly were sufficient to permit him to prepare his defense. Notice sufficient to prepare a defense is precisely the due process requirement enunciated in *Ruffalo*. It has been satisfied in this case. Any additional

specificity of the charges beyond that required by due process could have been secured by respondent through a request for a bill of particulars. We hold, therefore, that respondent was not denied due process.

The Administrator also charged respondent in each count of the complaint with conduct involving "dishonesty, fraud, deceit, or misrepresentation" in violation of Rule 1—102(a)(4) (87 Ill. 2d R. 1—102(a)(4)). These charges were grounded upon the same conduct which served as the basis for the charges that respondent failed to maintain a clients' trust account and that he commingled and converted clients' funds.

The Hearing Board did not reach the allegations of fraud and deceit. However, the Review Board considered them and concluded that respondent's pattern and practice of depositing and disbursing settlement proceeds from nontrust accounts was fraudulent within the meaning of Rule 1—102(a)(4).

Respondent takes exception to the Board's decision. Before this court, he denies that his conduct amounts to fraud and deceit. Alternatively, he argues that these charges were not proved by clear and convincing evidence. He notes that the Administrator produced no evidence of his intent to deceive or defraud, no evidence that any client was deceived, and no evidence that any client sustained financial or other loss.

Respondent's pattern and practice of depositing and disbursing clients' funds is premised on a basic deception. Respondent routinely gave clients either current or post-dated checks in return for their endorsements on their settlement checks. Clients gave these endorsements in reliance upon respondent's representation that funds would be available to honor his checks upon presentation on the stated date. Respondent's representation constituted a clear inducement to clients to provide their endorsements on the settlement checks. Respondent actu-

ally led his clients to believe that their portion of their settlement proceeds would be available upon presentment of his check on the stated date. However, respondent's representations were false and deceptive each time he gave a check drawn on an account which he knew or should have known might be overdrawn at the time of presentment. Furthermore, until such time as a dishonored check was paid or replaced with cash, respondent's false representation caused a direct loss to the clients affected.

Respondent makes much of the fact that no client actually lost funds. By this, he apparently means that no client was deprived permanently of funds and, therefore, no client was harmed. In support of this claim, he stresses that the dishonored checks were either paid on re-presentment or replaced with cash or another check which was honored promptly upon presentment.

Respondent's distinction is without merit. Certain of respondent's clients were harmed at the time they presented his check and found it dishonored. All of respondent's clients were harmed by his pattern and practice of issuing checks which he knew or should have known might be dishonored. We cannot ignore this reality simply because, to date, the harm sustained has not proved to be permanent.

Respondent, in all settlement transactions, took possession of clients' funds on their belief, which he induced, that his checks were good because they were backed by settlement checks which they had endorsed over to him. On the basis of this routine misrepresentation, respondent proceeded to deposit his clients' funds in one of several accounts utilized, in substantial part, to finance his personal and business affairs. He used these funds to pay for everything from utilities to gambling debts and allowances for himself and members of his family. In essence, respondent knowingly and under false

pretenses obtained the short-term use of large sums of money belonging to clients to finance his personal and business activities. We are in agreement with the Review Board's conclusion that this conduct constituted fraud and deceit in violation of Rule 1—102(a)(4).

We turn now to a consideration of the appropriate sanction. We believe that a substantial sanction is warranted in this case. We are mindful, however, "that predictability and fairness require a degree of consistency in the selection of sanctions for similar types of misconduct." *In re Woldman* (1983), 98 Ill. 2d 248, 257.

The Review Board has recommended that respondent be disbarred. However, "[w]ithout *** minimiz[ing] the serious nature of respondent's misconduct, it can fairly be said that the instances in which this court has disbarred lawyers because of commingling and conversion have involved circumstances of a substantially more aggravated character than appear here." (*In re Kesler* (1982), 89 Ill. 2d 151, 162.) Thus, disbarment has been the sanction where attorneys have negotiated settlements without the knowledge or consent of clients, forged their clients' endorsements, and permanently converted the funds. (*In re Smith* (1979), 75 Ill. 2d 134, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 81; *In re Snitoff* (1972), 53 Ill. 2d 50, *cert. denied* (1973), 412 U.S. 906, 36 L. Ed. 2d 971, 93 S. Ct. 2292.) Also, disbarment has been the sanction where an attorney forged signatures in order to replace funds previously converted from one client with funds converted from another client. *In re Feldman* (1982), 89 Ill. 2d 7.

Respondent's misconduct, while constituting a serious breach of his professional and fiduciary obligations, is not of this character. While respondent clearly misused his clients' funds, the record before us indicates that the length of loss sustained by his clients varied from three days to two months. The length of loss sustained by

Rooney, the client specifically named in count III, fell well within this two-month period. Further, Roll, the client specifically named in count IV, sustained no loss at all. Respondent's check to Roll was paid upon presentment. The record also reveals that the losses sustained by clients were cured by respondent upon receiving notification from those affected.

Thus, for the reasons stated herein, respondent is suspended from the practice of law for three years.

*Respondent suspended.*