FORD MOTOR CREDIT COMPANY, Plaintiff, v. JUAN MANZO, Defendant and Counterplaintiff-Appellee (Safeway Insurance Company, Defendant and Counterdefendant-Appellant).

First District (6th Division)    No. 1—88—3275

Opinion filed April 6, 1990.

Parillo, Weiss & Moss, of Chicago (Keely Truax, of counsel), for appellant.

Michael J. Dudek, of Chicago, for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

This is an appeal seeking vacation or reversal with or without remand of certain post-judgment orders entered by the trial judge on March 4, March 8, April 13, May 10, and May 20, 1988, and the orders entered August 19, 1988, and October 6, 1988, by Judge McCormick.

On November 16, 1979, Juan Manzo (Manzo) purchased a new 1980 Ford Super Cab pickup truck from a Ford dealer. The total purchase price was $11,463.05, paid by trade-in of Manzo's 1979 Ford Bronco and a $1,455 cash down payment with the balance of the price ($9,634.96) financed through Ford Motor Credit Company (Ford), the

plaintiff. Part 16 of the contract provides in part that the purchaser "shall not remove the Property from the country of his residence without the written permission of Seller." Manzo requested permission to take the truck on a visit to see his family in Mexico for Christmas, but permission was denied by Ford. Manzo left the truck in Chicago, in the care of his wife, and on February 13, 1980, the truck was stolen. At the time the truck was stolen, the mileage registered was approximately 400 miles. When the truck was later recovered it had been burned and was determined to be a total loss.

Safeway had issued automobile insurance to Manzo on the Bronco he traded in as part of the purchase price. The policy specified that it would cover any vehicle purchased to replace the vehicle named in the policy. Safeway did not dispute coverage on this vehicle nor that its policy included Ford as an additional insured. Upon proof of the loss, on February 23, 1980, Safeway offered Manzo $6,750 as a cash settlement for the destroyed Ford truck. Manzo refused to accept this amount. The record contains no information about the specifics of these negotiations with Manzo. The record discloses that Safeway then began to negotiate directly with Ford. Ford agreed to accept $6,750 in settlement of its claim on May 28, 1980. The settlement was not completed because Manzo would not agree to the amount offered by Safeway.

Ford filed suit against Manzo on December 11, 1980, alleging he was in default under his purchase contract and against Safeway because it was liable under the insurance contract to pay for the destroyed truck. Manzo filed a counterclaim against Safeway on the grounds that the settlement offered was too low and sought recovery of the price of the truck under the terms of the insurance policy. Manzo filed a counterclaim against Ford, subsequently amended, alleging that Ford had violated his civil rights by refusing permission to take the truck to Mexico and that as a result the truck was stolen and destroyed. The case went to trial on Ford's complaint, on Manzo's ninth amended counterclaim filed December 8, 1986, and on the respective responses to these pleadings.

The case was assigned to Judge Lipnick for immediate jury trial on July 20, 1987. At the close of all evidence on July 28, the trial judge directed a verdict in favor of plaintiff Ford against defendant Manzo and instructed the jury to find in favor of Ford and to assess damages in the amount of $9,157.81 plus expenses as provided "in the contract" plus costs and charges expended. The court also entered judgment in favor of Ford as counterdefendant and against Manzo as counterplaintiff on the countercomplaint.

The jury found in favor of plaintiff Ford against defendant Safeway on the complaint assessing damages in the sum of $9,157. The jury found in favor of counterplaintiff Manzo against counterdefendant Safeway on Manzo's countercomplaint, assessing damages in the sum of $1,350. No appeal is taken from the judgments in favor of Ford in the underlying suit.

The entry of these judgments did not dispose of that part of Manzo's cross-complaint against Safeway for prejudgment interest, penalties and attorney fees based on Safeway's allegedly improper settlement practices.

On August 2, within 30 days of the entry of the judgments in favor of Ford and Manzo against Safeway, counterdefendant Safeway moved to vacate any and all rulings and orders entered by Judge Lipnick on Manzo's counterclaim against Safeway on the basis that the judge's failure to recuse himself violated Supreme Court Rules 61 through 76 and therefore the judgments are void. However, Safeway raised no such challenge to the judgments entered in favor of Ford although the trial judge was the same and the judgments in Ford's favor were part of the same litigation.

Safeway moved for a jury trial or plenary evidentiary hearing on the question of Safeway's alleged vexatious, unreasonable conduct in violation of section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767) and on all other outstanding matters.

On August 3, Manzo petitioned the court for judgment against Safeway in the sum of $15,874.67 for penalties for improper settlement procedures in violation of section 155, for prejudgment interest, for Manzo's pretrial, trial and post-trial attorney fees and for reimbursement of $2,500 attorney fees paid to Ford. Judge Lipnick denied Safeway's request for a jury trial but granted the motion for plenary evidentiary hearing on the question of Safeway's conduct.

The hearing on all pending matters was continued from time to time until March 4, 1988, when, following a bench trial on the propriety of Safeway's conduct, Judge Lipnick entered an order finding Safeway's conduct on the settlement of Manzo's claim was capricious, vexatious and unreasonable, based on the holdings in the cases of *Watson v. State Farm Fire & Casualty Co.* (1984), 122 Ill. App. 3d 559, and *Songer v. State Farm Fire & Casualty Co.* (1982), 106 Ill. App. 3d 141. On Manzo's post-trial petitions the court awarded Manzo a judgment against Safeway in the sums of $337.59 for statutory penalties, $475.50 for costs, $2,500 for reimbursement of attorney fees paid by Manzo to Ford, and $8,625 for Manzo's pretrial, trial and post-trial attorney fees.

On March 8, Safeway moved to vacate the trial judge's order of March 4. The motion was taken under advisement. Thereafter on April 14 and May 10, the matter was continued for future determination. On May 20, Safeway moved for a change of venue alleging prejudice of the trial judge, Judge Lipnick. The motion was granted and the case was transferred to Judge McCormick.

Following a hearing on the question of the trial judge's bias, Judge McCormick entered a memorandum order on August 19, 1988, which granted Safeway's motion to strike a certain affidavit of Manzo's attorney and denied Safeway's motion to vacate "all orders entered by Judge Lipnick." In the memorandum order Judge McCormick stated that the burden of showing actual prejudice of the trial judge rested on the movant and concluded that the transcripts of proceedings submitted in support of Safeway's motion were incomplete and did not support Safeway's allegation of prejudice. The court found that "[a] review of the issue presented herein indicates that Judge Lipnick presided over the proceedings in a fair and just manner," and ordered the case transferred back to Judge Lipnick for further proceedings on Safeway's motion to vacate the judgment in favor of Manzo on the counterclaim and to vacate the award in favor of Manzo for prejudgment interest, costs, penalties and attorney fees. On October 6, Judge McCormick denied Safeway's petition for rehearing.

Safeway filed its notice of appeal on November 4, 1988, seeking vacation or reversal with or without remand of the orders of March 4, March 8, April 13, May 10, and May 20, 1988, entered by Judge Lipnick and the orders of August 19, and October 6, 1988, entered by Judge McCormick.

Safeway raises two issues on appeal: (1) whether the trial judge was actually prejudiced against Safeway or its attorney or whether his impartiality might reasonably be questioned; and (2) whether the award of attorney fees, costs and penalty was unwarranted and excessive.

While this appeal does not challenge the jury verdict or judgment in favor of Ford in the sum of $9,157, Safeway's motion of August 2, 1987, continued from time to time, did challenge the judgment in favor of Manzo on his counterclaim in the sum of $1,350 based on the jury verdict against Safeway. Because the post-trial petition for penalties, interest, costs and attorney fees alleged improper settlement procedures by Safeway, we must discuss briefly the trial testimony pertinent to the arguments made in this appeal.

Safeway first argues that it did not act capriciously or vexatiously nor did it unreasonably delay the settlement of Manzo's claim. Safe-

way further argues, in the alternative, that if its actions are found to be vexatious or unreasonable, the amount of attorney fees assessed is unwarranted and extreme.

Safeway presented evidence to show that to calculate the offered settlement of $6,750, its claims adjuster called Leonard Weisberg, who specialized in automobile replacement services for insurance companies, for his recommendation to determine an appropriate settlement offer. Weisberg testified that he gave some general advice to the claims adjuster for calculating the amount of the settlement offer. Weisberg refused to answer directly whether he could have found a replacement vehicle for the amount Safeway offered and could not provide any supporting material for his recommendation to the claims adjuster.

Safeway's claims adjuster, William W. Rice, testified that he began his calculations with the $10,867 price given by Ford and subtracted $1,600 for a special package which Safeway claimed was not covered by the insurance policy. From the base price of $9,268, Rice deducted 21% which represented the dealer's markup, which he testified was based upon the conversation with Weisberg. Then Rice added $100, resulting in a $7,400 replacement price for the truck.

The "Release and Subrogation Receipt" sent with the check to Ford indicated that from the $7,400 replacement price, $400 was deducted for depreciation on the truck, and $250 was deducted as the policy deductible. This computation resulted in the final settlement offer of $6,750.

■■ The Illinois Insurance Department has promulgated regulations for determining the amount of a cash settlement for a totally destroyed vehicle. "A cash settlement must be based upon the retail value of the automobile as published in a generally recognized source that is uniformly and regularly used by the company. Any deviation from this procedure must be supported by documentation that gives detailed information about the automobile's condition. Any deduction[s] from retail valuations must be measurable, discernible, itemized, and specified concerning dollar amount, and they shall be appropriate in amount. If the retail value of the specific automobile is not published in a generally recognized source, which is used uniformly and regularly by the company, the company must secure at least two written retail value dealer quotations and base the settlement upon them. Any deviation from this practice must be supported by documentation giving particular information about the automobile's condition." Illinois Department of Insurance Regulation 9.9 §6B9(ii)(a); *Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d

825, 827-28, 433 N.E.2d 378, 380; *Deverman v. Country Mutual Insurance Co.* (1978), 56 Ill. App. 3d 122, 124, 371 N.E.2d 1147-48.

The evidence discloses that Safeway did not base its offer on any "generally recognized source." The record does not disclose any documentation to support its offer beyond the "Release and Subrogation Receipt." The court found that in doing so, Safeway failed to follow the regulation guidelines.

■ Under sections 154.5 and 154.6 of the Illinois Insurance Code, an improper claims practice is "committed knowingly in violation of this Act or any rules promulgated hereunder" (Ill. Rev. Stat. 1987, ch. 73, par. 766.5(a)) and includes "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear" and "[c]ompelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them" (Ill. Rev. Stat. 1987, ch. 73, pars. 766.6(d), (e)).

■ The trial record supports the court's conclusion that the defendant insurance company did not follow the Illinois Department of Insurance regulations for determining the amount of a cash settlement. Safeway refused to change its offer at any time during the course of the suit, still insisting even on appeal that its offered amount is correct. Safeway's continued refusal to negotiate with Manzo was the reason for the filing of this law suit. The jury verdict which held Safeway responsible for a total of $10,507, an amount well over the sum it offered, further confirms that the court's finding that Safeway's behavior was vexatious, capricious and unreasonable had adequate support in the record.

■ There is no evidence in the record to indicate that Safeway engaged in fair negotiations with Manzo. There is indication that Safeway negotiated a settlement with Ford without Manzo's consent or participation and in contradiction to its contractual responsibilities. Without a record of the negotiations between Manzo and Safeway, we cannot say whether they were prompt and fair. (*Gille v. Winnebago County Housing Authority* (1970), 44 Ill. 2d 419, 427, 255 N.E.2d 904, 908 ("matters not properly in the record will not be considered *** by this court").) Because the record lacks sufficient information upon which a reversal on review can be based, we rely on the lower court's conclusion that Safeway acted improperly. *Student Transit Corp. v. Board of Education* (1979), 76 Ill. App. 3d 366, 370, 395 N.E.2d 69, 72.

■ Safeway argues that if its actions are found vexatious and un-

reasonable, the $8,625 in attorney fees awarded to Manzo are excessive. Section 155 of the Illinois Insurance Code provides that "the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus ***" and an amount in addition thereto for specified penalties. Ill. Rev. Stat. 1987, ch. 73, par. 767.

Manzo's attorney petitioned for fees of $11,350 and was awarded $8,625. Safeway points out that Manzo agreed to pay his attorney one-third of the recovery or $75 per hour, but argues that the judge based his calculations on the attorney's current rates of $100 and $125 per hour. Safeway also contends that the award is based upon an unreasonable amount of attorney time, including time required to amend the civil complaints.

In support of its argument that the award of attorney fees to Manzo was excessive, Safeway relies primarily on the decision in *Brosam v. Employer's Mutual Casualty Co.* (1965), 61 Ill. App. 2d 183, 209 N.E.2d 350. In that case, however, there was no finding of vexatious delay by the insurer and there was no adequate proof given for the costs incurred. Here Manzo's attorney presented a detailed time record document supporting his claim for fees. Manzo's attorney noted that in an effort to reflect a lower hourly rate then current at the beginning of the litigation from rates he charged as of the date of trial, he adjusted his claim by reducing the number of total hours in his representation of Manzo's interests.

■■ The trial judge considered the attorney's time records and the trial record from which the jury reached its verdicts and found that because of Safeway's capricious, vexatious and unreasonable conduct, Manzo was required to proceed to litigation to recover under his insurance policy with Safeway. The record here does not support a finding that the trial court's determination of attorney fees in the amount awarded was improper or excessive where the evidence clearly supports the conclusions reached by the court. We find no error.

We next consider Safeway's arguments that Judge Lipnick should have recused himself from the case. The argument is based solely on the fact that the judge was a member of the law firm shown as the attorney of record for plaintiff in a different case against Safeway filed on June 4, 1981. That litigation was filed by Judge Lipnick's then-law firm prior to the judge beginning his judicial service on July 1, 1983, and during the time that he was engaged in the practice of law. The complaint, trial attorney designation and affidavit of compliance were signed by "Clarence Lipnick" on behalf of the plaintiff's law firm. The defendant there was Safeway.

Safeway contends, but offers no proof, that because of this associ-

ation Judge Lipnick has recused himself in the past from other cases where Safeway was a party and that he should have done so here. We note that no motion for a change of venue from this judge was made prior to trial although the record discloses that during the life of this litigation Safeway moved for changes of venue from other judges at least twice. In fact, judgments were entered on the jury verdicts and a number of post-trial motions were ruled on and the hearing on Manzo's petition for interest, penalties, costs and fees had taken place and an award made before Safeway raised the issue of the trial judge's alleged bias for the first time.

■ Illinois Supreme Court Rule 63, at subsection C, states in pertinent part:

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where

(a) he has a personal bias or prejudice concerning a party or his lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(c) he was, within the preceding three years, associated in the private practice of law with any law firm or lawyer currently representing any party in the controversy (provided that referral of cases when no monetary interest was retained shall not be deemed an association within the meaning of this subsection) or, for a period of seven years following the last date on which he represented *** any party to the controversy while he was an attorney engaged in the private practice of law." 113 Ill. 2d R. 63(C).

■ While the rule requires disqualification where the judge has a personal bias or prejudice, the partial record presented by Safeway is not sufficient to support a finding of personal bias, prejudice, or partiality of Judge Lipnick, nor does it support a finding that he had personal knowledge of disputed evidentiary facts. Safeway's motion to vacate all orders entered by Judge Lipnick had a full hearing before Judge Carl McCormick and was denied. Judge McCormick found that "[a] review of the issues presented herein indicates that Judge Lipnick presided over the proceedings in a fair and just manner." We note that Judge McCormick also stated that Safeway provided the

court with four transcripts representing incomplete reports of the proceedings before Judge Lipnick.

It is the responsibility of the party alleging grounds for disqualification of a judge to make a sufficient record in the trial court to establish reversible error on appeal. (*Schranz v. I.L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 511, 412 N.E.2d 1378, 1383.) Judge McCormick considered the record of proceedings before Judge Lipnick and concluded that no impropriety had occurred. We find that the record presented does not support a contrary conclusion.

■■ Safeway argues that Judge Lipnick was required to recuse himself from this litigation because in 1980 the law firm with which he was then associated filed a similar cause of action for a totally different plaintiff, Borowski, against Safeway. The judge, who was then a practicing attorney, signed certain court documents as part of the firm's representation. Safeway offered no evidence to show that Judge Lipnick represented Safeway, Ford or Manzo within the seven years preceding this trial nor does the record show that his former law firm now or at any other time ever represented any party to this litigation. Because he has been on the bench since 1983, and is prohibited as a judge from practicing law, we find that the record is devoid of any proof that Judge Lipnick was associated in the practice of law with any of the lawyers of record in this case within three years preceding this trial. The record discloses that this case was assigned to Judge Lipnick on July 20, and that a six-person jury entered judgment following trial on July 28, 1987. Thereafter, Manzo filed the petition for prejudgment interest, penalties, costs and attorney fees which resulted in the orders now being appealed.

Judge Lipnick began his judicial service well before the three-year limitation of Rule 63. No proof was offered in support of Safeway's motion to suggest that Judge Lipnick has ever served as the attorney for any other party in this litigation. Not only had the judge at no time represented any party to this controversy, the date on which the Borowski case was filed and the date on which this case was assigned to Judge Lipnick are more than seven years apart.

Judge McCormick found Safeway's allegations of bias and impropriety to be unsupported by the record and found that Safeway had failed to meet its burden of establishing bias or prejudice of the trial judge against Safeway. We find Safeway's allegations to be groundless and find Judge McCormick's order appropriate on this record.

■■■ The key order entered by Judge Lipnick on March 4, 1988, found Safeway's conduct to be capricious, vexatious and unreasonable and entered judgment in Manzo's favor for interest, penalties, costs

and attorney fees. The order of March 8, 1988, on Safeway's subsequent emergency motion to vacate the March 4 order recited that the court took the motion under advisement. No subsequent ruling was entered by Judge Lipnick on Safeway's emergency motion to vacate the March 4 order. Judge McCormick's ruling addressed and denied Safeway's challenge to Judge Lipnick's entry of any court orders and transferred the case back to the trial judge for ruling on Safeway's motion to vacate the March 4 order. On November 28, 1988, Judge Lichenstein entered an order to stay enforcement of judgment pending the determination of the appeal. Because Judge Lipnick did not rule on Safeway's emergency motion to vacate the March 4 order for interest, penalties, costs and attorney fees, this cause is remanded back to Judge Lipnick for ruling on that narrow question only.

For all of the foregoing reasons, we affirm the orders of Judge McCormick entered on August 19, and October 6, 1988, and we affirm the orders of Judge Lipnick entered on March 4, March 8, April 14, May 10, and May 20, 1988, and remand this cause to Judge Lipnick for ruling consistent with this opinion.

Judgment affirmed in part, remanded in part.

McNAMARA and EGAN, JJ., concur.