T. JAY BOYD *et al.*, d/b/a Boyd and Bass Orchards, Plaintiffs-Appellees, v. UNITED FARM MUTUAL REINSURANCE COMPANY, Defendant-Appellant.

Fifth District   No. 5—90—0848

Opinion filed July 28, 1992.

Ward, Murray, Pace & Johnson, P.C., of Sterling (John A. Guzzardo, of counsel), for appellant.

R. Corydon Finch, of Finch & Karraker, P.C., of Anna, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiffs brought suit to recover damages under a policy of crop hail insurance issued by the defendant. Plaintiffs sought damages for the yield reduction resulting from hail damage to a portion of their 1986 apple crop. Plaintiffs also sought statutory damages for defendant's alleged bad-faith failure or refusal to settle plaintiffs' insurance claim. The jury found for the plaintiffs on both claims. Defendant appeals. We affirm.

On May 15, 1986, a portion of plaintiffs' apple crop in Union County, Illinois, was damaged by hail. Plaintiffs gave notice of hail damage to Kenneth Hight, an independent insurance agent in Union County who had authority to sell crop hail insurance for defendant. On May 22, 1986, Mr. Hight went to plaintiffs' orchard to inspect the damage. This was Hight's first attempt at apple adjusting, and before completing the adjustment, he contacted the defendant, which sent a more experienced adjuster to handle the claim.

On May 30, 1986, the defendant sent Mr. Francis Martin, from Wisconsin, to calculate the plaintiffs' hail damages. There was immediate disagreement between the plaintiffs and the adjuster as to how best to assess the losses. The plaintiffs did not approve of the procedure which Mr. Martin used in obtaining sample apples for use in the yield-reduction calculation. Terry Boyd asked Martin to use a ladder to obtain sample apples from the tops of trees, where damage was likely to be heavier, as well as apples from the sides of the trees which could be reached from the ground. Martin declined to use the ladder and picked only those apples which could be reached from the ground. Plaintiffs decided that Mr. Martin's adjustment would be unacceptable even prior to his final adjustment. Martin estimated plaintiffs' losses at 47.9% for yellow apples and 45.25% for red apples for a total insurable loss of $40,782.50. Martin advised the plaintiffs of his calculated percentage of loss before leaving that day. Plaintiffs were dissatisfied with his final calculations.

Plaintiffs hired their own adjuster, Kenneth Staley, who on June 19 and 20, 1986, made an appraisal of plaintiffs' hail damage. Staley included apples from both the top and the sides of the trees in his sampling, and he also accounted for the growing conditions in southern Illinois. Staley determined a loss of 72.4% for red apples and 63.3% for yellow, for a total insurable loss of $98,708.

On June 26, 1986, plaintiffs spoke with defendant's representative Malone, and Mr. Malone discussed the possibility of arbitration with them. On August 20, 1986, plaintiffs requested that their claim

be submitted to arbitration. On August 29, 1986, defendant tendered to plaintiffs a check in the sum of $40,782.50 as settlement for plaintiffs' claim based on Francis Martin's adjustment. On September 2, 1986, plaintiffs received a letter from defendant's attorneys stating that their request for arbitration was not timely made and suggesting that they file suit if they were not willing to settle for the amount tendered. On October 1, 1986, plaintiffs filed suit against defendant.

Prior to trial, plaintiffs made an oral motion *in limine* to prohibit defendant from eliciting any evidence concerning plaintiffs' income tax returns, actual yield or profit or loss in 1986. Defendant moved to compel plaintiffs to produce income tax and yield records and to produce plaintiffs' bookkeeper at trial. Defendant also made an oral motion for sanctions for failure to comply with a prior discovery request for income and yield information. The court denied defendant's motions and granted plaintiffs' motion *in limine*. The court also denied defendant's subsequent request for reconsideration. The parties stipulated that a final issue regarding the applicability of a 15% deductible to the insurance policy in question could be decided by the court after the jury rendered its verdict.

The final complaint was in two counts. Count I was based on the policy under which plaintiffs sought damages sustained by their apple crop based on their submitted calculations. Count II sought damages under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767) based upon six claimed categories of vexatious and unreasonable conduct.

The jury found for the plaintiffs on count I, and pursuant to an agreement of the parties the judge determined damages to be $88,834. The jury also found for the plaintiffs on count II. As agreed by the parties, the judge then determined statutory attorney fees and damages. The court determined statutory attorney fees to be $15,426.12, statutory damages to be $22,208, and statutory prejudgment interest to be $17,766. The court also found that the 15% deductible did not apply to the insurance policy in question.

On appeal defendant claims that the trial court abused its discretion in denying defendant's discovery motions and in allowing plaintiffs' motion *in limine*. Defendant also contends the trial court abused its discretion by granting plaintiffs' motion for attorney fees and additional damages and by awarding prejudgment interest. Finally, defendant claims the court's finding that the 15% deduction did not apply was contrary to the manifest weight of the evidence

and that the jury verdicts on counts I and II were both contrary to the manifest weight of the evidence.

We will first address the court's rulings on the motions. Defendant claims that the trial court committed reversible error in denying its oral motion to compel plaintiffs to produce their bookkeeper to testify at trial and in denying its motion to compel plaintiffs to produce yield records, marketing records, and income tax returns, as well as in granting plaintiffs' motion *in limine* prohibiting defendant from offering evidence of plaintiffs' tax returns, yield records or marketing records to challenge plaintiffs' evidence on the issue of damages. Defendant also claims the trial court erred in denying its motion to reconsider plaintiffs' motion *in limine*.

■■ The trial court judge held that the plaintiffs' tax returns and yield records for the several years requested were not relevant to the question of determining damages to the apple crop by the hail storm in 1986. Likewise, the trial court denied defendant's motion to compel plaintiffs to produce their bookkeeper, Mr. Fozzard, based at least in part on the irrelevancy of his testimony on the issue of damages. We agree. The Illinois Supreme Court has adopted Rule 401 of the Federal Rules of Evidence, which defines relevant evidence as

> "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295; *In re Elias* (1986), 114 Ill. 2d 321, 499 N.E.2d 1327.

The parties had stipulated that (1) plaintiffs' 1986 apple crop was damaged by hail on or about May 15, 1986; (2) plaintiffs' 1986 apple crop was insured for hail damage under a policy of insurance issued by defendant; (3) the hail damage to plaintiffs' 1986 apple crop was covered under the defendant's policy; (4) defendant, through an adjuster hired by it, made a calculation of the extent of hail damage to plaintiffs' apple crop and offered to pay plaintiffs for the loss based upon its adjuster's calculations; and (5) plaintiffs, through an adjuster hired by them, also calculated the extent of the hail damage to the 1986 apple crop.

The only issue remaining in count I was whether the plaintiffs could support their claim of a higher percentage of damages to the 1986 apple crop. Ultimately, this was to be decided by determining if plaintiffs' adjustor's method of assessing damages accurately reflected the percentage of the 1986 crop lost due to the hail storm.

■ Prior or succeeding profits or losses sustained by the plaintiffs on the apple crop in question in other years were irrelevant in determining what percentage of the 1986 crop was damaged. Under the policy the amount owed to plaintiffs due to crop loss by hail would be decided by first determining the percentage of crop loss from hail on each specific acre. This percentage would then be applied in the same proportion to the amount of insurance applying to that specific acre on the date of loss. Thus, if acre A was insured for $1,000 and acre A suffered a 50% loss in crop yield due to a covered loss, the insured would receive $500 in damages. This being said, it becomes obvious that ultimate profits and losses are irrelevant in determining insured crop losses as they are largely based on a fluctuating market price and not specifically on a quantitative number of apples. Similarly, actual quantitative yield may be inadequate and misleading in assessing damages in that the number of apples, like the market price, may fluctuate greatly from year to year. For example, had 1986 been for all other purposes a bumper crop, the ultimate numerical yield might have shown no decrease in the number of apples harvested from the previous year despite the losses caused by the hail. Thus tax returns and yield records could only confuse and mislead the fact finder while having no tendency to make the fact in consequence (accuracy of plaintiffs' estimated percentage losses) more probable or less probable than it would be without the evidence. By the same reasoning, the trial court did not err in refusing to compel plaintiffs to produce their bookkeeper at trial. No reason for Mr. Fozzard's production at trial was given by defendant other than to aid in providing income and yield information on the plaintiffs' apple crop for the year 1986 and the years just prior and subsequent to, which, as we have indicated, are irrelevant to the issue at hand.

We, therefore, conclude the trial court correctly granted the plaintiffs' motion *in limine* and that the court correctly denied defendant's motion to reconsider the order granting plaintiffs' motion *in limine*.

■ By agreement of the parties, the trial court was asked to determine, after the jury rendered its verdict, whether the insurance policy in question was subject to a 15% deductible. The trial judge ruled that the policy was not subject to the deductible, and the defendant now contends that this holding was contrary to the manifest weight of the evidence.

Defendant's contention is based on the allegation that plaintiff Terry Boyd, in a pretrial discovery deposition, admitted or conceded

that the 15% deductible was applicable. A "judicial admission" is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge. (*Derby Meadows Utility Co. v. Inter-Continental Real Estate* (1990), 202 Ill. App. 3d 345, 355, 559 N.E.2d 986, 991; *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 480, 508 N.E.2d 301, 303.) There may be cases in which admissions at pretrial depositions are so deliberate, detailed, and unequivocal as to matters within the party's personal knowledge that they will conclusively bind the party-deponent, and he will not be heard to contradict the admission at trial. (*Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 11, 170 N.E.2d 393, 398.) This is not one of them. Certainly the information concerning the 15% deductible was not peculiar to Boyd, nor can it be argued to be within his personal knowledge to the point of conferring upon him the competency to transform such a statement into an admission. (*Deichmiller v. Industrial Comm'n* (1986), 147 Ill. App. 3d 66, 497 N.E.2d 452.) What we have here is an insured commenting on what he believes is contained in his policy. It is at most a speculation. We, therefore, hold that the defendant has not established that the trial court's ruling on the 15% deductible was contrary to the manifest weight of the evidence.

■ Defendant also claims that the jury verdict on count I of the complaint was contrary to the manifest weight of the evidence. A verdict is contrary to the manifest weight of the evidence only where, upon review of all the evidence in a light most favorable to the party who prevailed at trial, an opposite conclusion is clearly apparent or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 156, 507 N.E.2d 1213, 1227.) Defendant has failed to show any application of this standard to the present case. The sole issue facing the jury on count I was whether the plaintiffs had proven the damages to the apple crop by a preponderance of the evidence. A review of the record, when viewed in a light most favorable to the plaintiffs, reveals no evidence suggesting the jury's finding was erroneous, unwarranted, the result of prejudice or passion, arbitrary or unsubstantiated. We, therefore, cannot find that the jury's verdict on count I was contrary to the manifest weight of the evidence.

■ Likewise, defendant claims that the jury's verdict on count II of the complaint was contrary to the manifest weight of the evidence. Under count II the plaintiffs sought damages based upon six

categories of vexatious and unreasonable conduct by the defendant. In determining whether defendant's conduct was vexatious and unreasonable, the totality of the circumstances, taken in broad focus, will determine the matter, and a finding of vexatiousness will not be disturbed absent a showing of abuse. (*Norman v. American National Fire Insurance Co.* (1990), 198 Ill. App. 3d 269, 303, 555 N.E.2d 1087, 1109.) The question of vexatious and unreasonable action or delay is a factual issue. (*Norman*, 198 Ill. App. 3d at 304, 555 N.E.2d at 1110.) As such, it is best left to the determination of the finder of fact. A review of the record reveals that there was immediate dissension as to the proper methodology to be used in determining yield loss. Defendant notes that the plaintiffs objected to Mr. Martin's technique even before his final calculations were tallied. We find this a telling factor in demonstrating plaintiffs' sincerity in their dispute. Plaintiffs were genuinely concerned with the proper method to be used in determining loss and not simply with the end result. The record shows that the defendant was adamant as to the amount owed and refused to arbitrate upon plaintiffs' request even though Mr. Staley's adjustment suggested that losses were far greater than defendant was willing to acknowledge. Defendant's continued refusal to negotiate with plaintiffs was the primary reason for this lawsuit being filed. The jury's finding that the plaintiffs' adjustor's method was the appropriate one (which resulted in an assessment of damages at twice the sum offered by the defendant) further confirms defendant's behavior as vexatious and unreasonable. (*Ford Motor Credit Co. v. Manzo* (1990), 196 Ill. App. 3d 874, 554 N.E.2d 480.) In viewing the totality of the circumstances, we find no showing of abuse and cannot say that the jury's finding of vexatious and unreasonable behavior on the part of the defendant was contrary to the manifest weight of the evidence.

■ Next we turn to defendant's claim that the trial court abused its discretion in granting plaintiffs' motion for reasonable attorney fees and expenses, supplemental attorney fees, and additional damages, pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767).

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the

action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." (Ill. Rev. Stat. 1985, ch. 73, par. 767(1).)

Since we have already concluded that the jury's determination that the defendant was vexatious and unreasonable was not against the manifest weight of the evidence, we do not agree with defendant's contention that the trial judge's award of costs and fees, within the statutory guidelines of section 155, was an abuse of discretion or unconscionable.

██ Finally, we address the issue of the prejudgment interest. Defendant asserts that the trial court abused its discretion by awarding prejudgment interest pursuant to section 2 of the Interest Act (Ill. Rev. Stat. 1985, ch. 17, par. 6402). Decisions concerning awards of prejudgment interest are based on questions of fact, and their determination will not be disturbed on review unless contrary to the manifest weight of the evidence. *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872, 883.

In its award of prejudgment interest, the trial court based its decision on the "unreasonable and vexatious delay of payment" by the defendant. Defendant correctly states that an honest dispute as to the existence of a legal obligation will not result in unreasonable and vexatious delays which would permit recovery of prejudgment interest. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738, 743.) However, as stated above, the jury and the trial court both found the defendant's actions unreasonable and vexatious, and we have affirmed those findings. Under these circumstances, the defendant's claim of an "honest dispute" is not persuasive.

Contrary to the defendant's argument, the mere fact that plaintiffs' complaint did not ask for interest was of no moment, since interest is provided by statute and will be read into the complaint. *Madison Park Bank v. Field* (1978), 64 Ill. App. 3d 838, 843, 381 N.E.2d 1030, 1034.

Lastly, defendant points out that in order to recover prejudgment interest, the sum due must be liquidated or subject to easy determination. (*Marvel Engineering Co. v. Commercial Union Insurance Co.* (1983), 118 Ill. App. 3d 844, 854, 455 N.E.2d 545, 552.) Defendant argues that at all times prior to entry of judgment there existed a genuine dispute between the parties concerning damages and the 15% deductible, and as such the amount due was not readily ascertainable before judgment. However, given the findings of the jury on counts I and II and the wording of the trial court in awarding the prejudgment interest, we find that logic dictates that both the jury and the judge believed the amount due was in fact readily ascertainable, that there was no genuine dispute, and that but for the "unreasonable and vexatious" behavior of the defendant the sum due was subject to easy determination. Unlike *Marvel*, defendant in the instant case did not contest that plaintiffs were due an award of damages. The issue was not the amount due, but rather which method of calculation, plaintiffs' or defendant's, was proper. Once the method was decided, the sum due was subject to easy determination by the court, according to an agreement by the parties. Normally a genuine dispute concerning damages would negate prejudgment interest. However, in this case there was not so much a genuine dispute as there was a denial by defendant of the validity of plaintiffs' method. Such a situation is more comparable to a total denial of liability on the part of defendants (for purposes of determining prejudgment interest) than an honest dispute as to the amount owed. In other words, the defendants gave the jury only two choices rather than an array, and the jury sided with the plaintiffs. With the defendant's actions then being found to be unreasonable and vexatious, the application of a prejudgment interest became proper. To hold otherwise would allow the defendant to profit from its capricious acts.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GOLDENHERSH, P.J., and RARICK, J., concur.