# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Eschbach v. McHenry Police Pension Board*, 2012 IL App (2d) 111179**

---

| | |
|---|---|
| Appellate Court Caption | MARY LEE ESCHBACH, Plaintiff-Appellant, v. THE McHENRY POLICE PENSION BOARD, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-1179 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | August 17, 2012<br><br>September 20, 2012<br>September 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff's application for a nonduty disability pension was affirmed on the ground that plaintiff was terminated from her position prior to the date she filed her application and was ineligible for such a pension. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 11-MR-166; the Hon. Michael T. Caldwell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Martin V. Kugia, of Law Office of Kugia & Forte, P.C., of West Dundee, for appellant.

Richard J. Puchalski, of Law Offices of Richard J. Puchalski, of Libertyville, and Laura J. Goodloe, of Law Offices of Richard J. Puchalski, of Chicago, for appellee.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    On February 14, 2011, plaintiff, Mary Lee Eschbach, filed an application for a nonduty disability pension (40 ILCS 5/3-114.2 (West 2010)) because she allegedly suffers from a blood clot condition in her right leg. The McHenry Police Pension Board (Board) denied the application, finding that plaintiff's employment had been terminated in June 2010, and, therefore, plaintiff was ineligible to apply for a disability pension, based on *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One*, 122 Ill. 2d 22, 30 (1988), and *Freberg v. Board of Trustees of the Firemen's Pension Fund*, 128 Ill. App. 2d 369, 375 (1970), which held that a police officer (or firefighter) has no right to disability benefits unless he or she applies for those benefits while still employed. On October 18, 2011, the trial court affirmed the Board's decision, and plaintiff appeals.

¶ 2    On appeal, plaintiff contends that (1) the Board erred in relying on *Di Falco* and *Freberg*, as the facts in her case are distinguishable; (2) the termination was made in bad faith; and (3) the termination was not legally valid, because she did not receive notice of it. The Board raises an additional argument that plaintiff's nonduty disability claim is foreclosed by the doctrine of *res judicata* because plaintiff could have made the present claim when she was proceeding on an earlier claim for a line-of-duty disability pension. We affirm.

¶ 3                              FACTS

¶ 4    Plaintiff joined the City of McHenry Police Department (police department) in February 1996. On June 25, 2005, she sustained an injury to her left wrist while attempting to subdue an arrestee at a local hospital. Plaintiff filed a workers' compensation claim for her injury in 2006. Plaintiff also filed an application for a line-of-duty disability pension with the Board on January 29, 2007, due to the injury to her wrist. On March 31, 2008, the Board found that

plaintiff was not disabled and denied plaintiff's disability pension request. The trial court affirmed the Board's decision, and we affirmed the trial court's judgment on March 31, 2010. *Eschbach v. McHenry Police Pension Board*, No. 2-08-1146 (2010) (unpublished order under Supreme Court Rule 23). Plaintiff and the City of McHenry (City) settled the workers' compensation case on January 31, 2011.

¶ 5 On February 14, 2011, plaintiff filed with the Board her application for a nonduty disability pension due to arterial blood clots in her right leg. Plaintiff alleged that the condition was present and worsening when we affirmed the denial of her line-of-duty disability pension. She maintained that her symptoms began in January 2007 and worsened in January 2010.

¶ 6 The police department alleged that plaintiff never communicated with it as to whether she intended to return to work following our March 31, 2010, decision and that plaintiff moved and did not notify it of her new address. The record contains a notice-of-separation form signed on January 24, 2011, by John Jones, the chief of police. The notice provides that plaintiff's last day of employment with the police department was June 2, 2010, and that the reason for her termination was that plaintiff "[d]id not return to work after denial of a line-of-duty disability Pension request." There is nothing in the record to show that this notice was mailed to or received by plaintiff.

¶ 7 At the hearing before the Board, Vicky Zinanni, the human resources manager for the City, testified that the notice of separation indicated that plaintiff was separated from the police department on June 2, 2010, and that plaintiff had not made any pension contributions after she filed a disability pension application in January 2007. Zinanni did not know plaintiff's specific last date of employment, but she stated that she had a discussion with Jones about the final determination regarding plaintiff's line-of-duty disability pension claim, which occurred in late March 2010. Zinanni and Jones wanted to give plaintiff plenty of time to return to work, and when she did not, "that was the date." Zinanni testified that she was not sure when she had this discussion with Jones and that it was probably after June 2010, but she honestly did not remember. Zinanni did not play any role in deciding if and when a notice of separation should be completed and did not have an explanation as to why, if the last date of employment was in June 2010, the notice of separation was not completed until January 24, 2011.

¶ 8 Plaintiff testified that she has a history of arterial blood clots in her right leg and has had five of them surgically removed. She began treatment in January 2007. Plaintiff stated that, following the March 2010 decision, she did not report back to work because of her blood clot condition. She stated that she never received a copy of the notice of separation informing her that her employment had been terminated. She assumed that the police department knew her address as of June 2010, because she had received some correspondence from it in January 2011 regarding the nonduty disability pension application. Plaintiff first found out that she had been terminated by the police department after she applied for the nonduty disability pension, when she received a letter from the police department's attorney informing her why she was not eligible.

¶ 9 Plaintiff testified that she and the City entered into a workers' compensation settlement

contract, which she signed on January 31, 2011, and that, during the negotiations for the settlement of that case, she was informed by a representative of the City that she could apply for a nonduty disability pension.

¶ 10 On cross-examination, plaintiff stated that her attorney informed her about filing for the nonduty disability pension; he had discussed it with the workers' compensation attorney as part of the workers' compensation negotiations. When asked if she received any communications from the Board or from its legal counsel as to whether she could file for a nonduty disability pension in February 2011, plaintiff replied that she received only the pension application, which she had asked for. Plaintiff stated that she did not make any pension contributions after she filed the application for the line-of-duty disability pension in 2007. She stated that she did not report back to work after the Board's denial of her line-of-duty pension application was affirmed by this court in March 2010. Plaintiff further stated that she did not communicate with the police department regarding whether she could take administrative leave and did not inform it that she had changed her address.

¶ 11 On redirect, plaintiff indicated that she was not aware of the notice of separation until January 24, 2011, two weeks before she applied for the nonduty disability pension and one week before she signed the settlement contract in the workers' compensation case.

¶ 12 On May 17, 2011, the Board denied plaintiff's application. In its decision, the Board made the following findings of fact: (1) plaintiff did not report back to duty after the Board's decision denying her line-of-duty disability pension was affirmed by this court in March 2010; (2) plaintiff had been terminated from her employment by the police department in June 2010; (3) plaintiff filed her application for a nonduty disability pension on February 14, 2011, eight months after her separation of employment from the police department; and (4) no pension contributions have been received from plaintiff since 2007.

¶ 13 In denying the application, the Board concluded:

"One of the prerequisites to receiving either a duty-related or nonduty disability pension is that the applicant must be a police officer as that term is defined in the Pension Code. [Citations.] Case law is clear that disability applicants must be employed as either police officers or firefighters both at the time the injury was sustained and at the time of application for the disability pension. See *Di Falco v. Board of Trustees of Firemen's Pension Fund of Wood Dale Fire Protection District No. One*, 122 Ill. 2d 22 (1988), *Stec v. Oak Park Police Pension Board*, 204 Ill. App. 3d 556 (1st Dist. 1990); *Freberg v. Board of Trustees of Highland Park*, 128 Ill. App. 2d 369 (2nd Dist. 1970).

In this case, [plaintiff] was separated from employment in the McHenry Police Department on June 2, 2010, over eight months prior to her filing for a disability pension. In addition, no pension contributions have been received from [plaintiff] since 2007."

¶ 14 Plaintiff filed a complaint for administrative review on June 20, 2011. Plaintiff contended that she was eligible to apply for a disability pension as of the date of her application on February 14, 2011, notwithstanding that the notice of separation was completed three weeks earlier, on January 24, 2011. In particular, plaintiff argued that the Board erred in relying on *Di Falco* and *Freberg* because, unlike the employees in those cases, she would still be employed as a police officer if not for her disability; that the City's decision to complete the

-4-

notice-of-separation form on January 24, 2011, was a calculated, bad-faith attempt to deny plaintiff her right to apply for pension benefits; and that the police department's failure to notify her of her separation from employment violated her right to notice and a fair hearing before being discharged. On October 18, 2011, the trial court affirmed the Board's decision. Plaintiff timely appeals.

¶ 15                                    ANALYSIS

¶ 16        In an administrative appeal, we review the decision of the administrative agency, not the determination of the trial court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007); *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*). Section 3-148 of the Illinois Pension Code (40 ILCS 5/3-148 (West 2010)) provides that judicial review of a decision by the Board is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)), pursuant to which our review extends to all questions of fact and law presented by the entire record. 735 ILCS 5/3-110 (West 2010); *Marconi*, 225 Ill. 2d at 532; *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 61 (2005).

¶ 17        Rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence. *Marconi*, 225 Ill. 2d at 532; *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471-72 (2005). "An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). In contrast, we review questions of law *de novo* (*Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995)), and a mixed question of law and fact is reviewed under the clearly erroneous standard (*Marconi*, 225 Ill. 2d at 532). Under any standard of review, a plaintiff in an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden. See *Marconi*, 225 Ill. 2d at 532-33 (citing *Miller v. Hill*, 337 Ill. App. 3d 210, 216 (2003)).

¶ 18        In reaching its decision, the Board first found, based on a preponderance of the evidence, that plaintiff's last date of employment with the police department was June 2, 2010; that she did not return to work after our affirmance of the denial of her line-of-duty pension request; and that plaintiff filed her application for a nonduty disability pension on February 14, 2011, eight months after her separation of employment from the police department. Next, the Board relied on case law holding that a disability pension applicant must be employed as a police officer both when the injury was sustained and when the application was filed. The Board denied plaintiff's application because plaintiff was not employed as a police officer when she submitted it.

¶ 19        This case presents a mixed question of fact and law, to which we apply the "clearly erroneous" standard of review. The question of fact is whether plaintiff was terminated from her employment with the police department prior to February 14, 2011. The question of law is whether she can maintain her pension application if she was so separated.

¶ 20        The evidence is undisputed that plaintiff's employment with the police department ended before she filed her nonduty disability pension application. Plaintiff claimed that she was

physically unable to return to work. However, she also admitted that her inability to work was never communicated to the chain of command at the police department. According to police department records, plaintiff's last day of employment was June 2, 2010, and the reason for her termination was that she "did not return to work after denial of a line-of-duty disability pension request."

¶ 21     Plaintiff does not dispute the Board's finding that she was no longer employed as a police officer at the time she filed the application for a nonduty disability pension. Nor does she dispute that, under controlling case law, a disability pension applicant must be a police officer both at the time of the disabling injury and at the time of the disability pension application. Rather, plaintiff's first contention concerns the reasons for her termination and the Board's reliance on *Di Falco* and *Freberg*. Plaintiff maintains that the pension applicants in those cases were not terminated for any reasons related to their disabilities, whereas, in her case, she would still be employed as a police officer if not for her disability.

¶ 22     Plaintiff's argument misses the point. Plaintiff's termination had nothing to do with her alleged disability. The police department terminated plaintiff for failing to report back to work after the denial of her line-of-duty disability pension was affirmed by this court. In fact, the police department had no way of knowing that plaintiff was claiming that she was disabled from the blood clot condition, since plaintiff had not provided an explanation for her absence. When an employee does not show up for work and does not contact his or her employer or give a reason for the absence, it is not unreasonable for the employer to assume that the employee has quit or abandoned employment. That was the reason for plaintiff's termination; it was not her alleged disability. As pointed out by the Board, the circumstances surrounding plaintiff's termination are not really at issue in this case. The important question before the Board was whether plaintiff was still a police officer on February 14, 2011, when she filed the nonduty disability pension application, and the Board concluded that she was not. Under the holdings in *Di Falco* and *Freberg*, the Board's determination that plaintiff had no right to a nonduty disability pension because she applied for that pension when she was no longer employed as a police officer was not clearly erroneous.

¶ 23     Plaintiff next argues that the decision to complete the notice of separation on January 24, 2011, was calculated in bad faith in order to deny her the right to apply for a disability pension. Plaintiff asserts that, while she was engaged in settlement negotiations regarding her workers' compensation case, approximately 30 days before she signed the settlement agreement on January 31, 2011, she was told that she was eligible to apply for the nonduty disability pension. Plaintiff testified that she had called the police department and requested the application forms before January 24, 2011. She contends that the completion of the January 24, 2011, notice of separation was not a coincidence but was a bad-faith effort to deny her the nonduty disability pension after the police department learned that she would pursue it.

¶ 24     Plaintiff further contends that the termination was legally invalid because she never received notice of it. Plaintiff points to her testimony that she never received notice of her termination and that the Board did not submit any evidence that notice had been sent to her. She further points out that the police department had her current address, because it sent her the disability pension application before the notice of separation was completed on January

-6-

24, 2011. Because the Board failed to notify her of her termination, plaintiff asserts, she was never provided an opportunity to respond to or challenge the decision.

¶ 25 Again, plaintiff's arguments miss the point. The Board did not terminate plaintiff; the City did. A municipality and a pension board are two separate entities. See *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 518-21 (2005); *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1075 (1997) (a municipality's police pension fund is not in privity with the municipality itself). Relying on *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696 (1971), plaintiff contended during oral argument that the Board acts as an agent of the City and that the decision of one binds the other. In *Dempsey*, the plaintiff, the widow of a municipality's chief of police, applied for and was awarded workers' compensation benefits by the Industrial Commission, based on its finding that her husband's death resulted from injuries arising out of and in the course of his employment. She also applied for a pension benefit on the basis that her husband died in the performance of his duty. The police pension fund denied the application. Although the municipality was a party to the proceedings before the Industrial Commission, the board of trustees of the pension fund was not, and it claimed that it could not be bound by the Industrial Commission's decision. The *Dempsey* court disagreed, concluding that the municipality was the real party in interest in both proceedings, "[e]ven though the Board of Trustees of the Policemen's Pension Fund was not a party to the proceedings before the Illinois Industrial Commission, by the most logical interpretation of the statute creating the Board it is an agency of the city and is bound by a judgment rendered against the city." *Dempsey*, 3 Ill. App. 3d at 698. Unlike *Dempsey*, the present case does not involve an earlier judgment that could be binding on the Board. Additionally, in more recent cases, a view opposite to *Dempsey*'s was taken; in *Rhoads*, we rejected the notion that the city and the pension board were the same merely because they were both public entities. We also observed that "the lack of privity between the parties is supported by the distinct identity, constituency, and interest of the Pension Board." *Rhoads*, 293 Ill. App. 3d at 1075. Whether plaintiff was terminated by the police department in bad faith and whether she did not receive notice of her termination in violation of her due process rights are grievances plaintiff could have brought against the City through the collective bargaining agreement between the City and the police union, when she learned of her termination. There is no evidence that she has taken legal action to challenge that employment decision.[1] In any event, the fact that the notice of separation was not completed until eight months after the date of her termination, or that she did not receive notice of her termination, does not defeat the Board's finding that plaintiff was no longer employed as a police officer when she submitted her nonduty

---

[1]Although not part of the record, the Board notes in its appellate brief that the collective bargaining agreement provides that the chief of police has the authority to impose discipline, including termination of a covered member for just cause; that neither the police chief nor the City or their agents may file charges asking the Board to impose or review discipline on any nonprobationary bargaining-unit employee; and that the decision of the police chief with respect to any suspension or dismissal action shall be deemed final, subject only to the review of said decision through the grievance and arbitration procedure.

disability pension application. Moreover, whatever the reason for plaintiff's termination, even if unjust, she can be reinstated only by rightful authority, and, until she is reinstated, it is not, we believe, in the power of the Board to award her a disability pension. In sum, once the decision was made by the police department to terminate plaintiff's employment, the Board had no alternative but to deny the pension application, because plaintiff was no longer a police officer when she applied.

¶ 26 Finally, the Board argues that, because plaintiff could have raised her blood clot condition as an additional cause of disability at the line-of-duty pension hearing in 2008, but did not do so, under the doctrine of *res judicata* she cannot now claim that she is disabled by this condition. Because we affirm the decision of the Board on the basis that plaintiff was not a police officer when she filed the nonduty disability pension application, we need not address this issue.

¶ 27                                    CONCLUSION

¶ 28 Accordingly, for the preceding reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 29 Affirmed.