2018 IL App (2d) 170637
No. 2-17-0637
Opinion filed November 8, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHARTER PROPERTIES, INC., Indiv. and as Assignee of Szechwan Garden of St. Charles, Inc., | ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-L-601 |
| ROCKFORD MUTUAL INSURANCE COMPANY, | ) ) ) | Honorable David R. Akemann, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice Birkett concurred in the judgment and opinion.
Justice McLaren specially concurred, with opinion.

**OPINION**

¶ 1 Szechwan Garden was a tenant that operated a restaurant in a commercial building owned by plaintiff, Charter Properties, Inc. They each purchased an insurance policy from defendant, Rockford Mutual Insurance Company. The building partially collapsed, and plaintiff submitted claims to defendant for the loss of the building and for lost business income.

¶ 2 Defendant made a few payments but notified plaintiff that the claims would be "held in abeyance" pending the completion of defendant's inspection. Plaintiff, on its own behalf and as assignee of Szechwan Garden, ultimately filed a third amended complaint for breach of contract

and unreasonable and vexatious delay in settling the claims under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2012)). A jury found that defendant had breached the insurance contracts, and the section 155 claims proceeded to a bench trial that resulted in a judgment for plaintiff. Defendant appeals, arguing that the latter judgment must be reversed because a *bona fide* dispute existed as to the amount owed. We affirm and remand.

¶ 3                                         I. BACKGROUND

¶ 4                                    A. Defendant's Payments

¶ 5      The building collapsed on August 8, 2011. Defendant stipulated that the policies covered the collapse, but the parties disagreed over the amount of liability. Plaintiff's policy provided building replacement coverage of $1.64 million plus $10,000 for building code upgrades. Szechwan Garden's policy provided coverage to replace personal property in the amount of $127,000 plus $4000 for signage. On December 8, 2011, Szechwan Garden assigned its contractual rights to plaintiff.

¶ 6      The parties stipulated that, at the time of the collapse, Szechwan Garden was renting the second floor for $1500 per week. The restaurant was closed for nearly 49 weeks, from August 8, 2011, through July 12, 2012, while the building was being replaced. As a result, plaintiff lost $72,643 in rental income. However, defendant paid only $54,000 for lost rental income: $36,000 on September 25, 2011, and $18,000 on March 19, 2012.

¶ 7      Plaintiff asserted that it spent more than $1.76 million to rebuild. At the jury trial on the breach-of-contract claims, Joe Ariss, plaintiff's claims-adjusting expert, testified that the policy rendered defendant liable for $1,603,648 on the building repair claim. The unrebutted evidence shows that defendant paid plaintiff $1,046,964 on that claim: $40,000 on September 25, 2011;

$100,000 on November 28, 2011; $531,263 on March 19, 2012; and two payments of $366,489 and $9212 on June 4, 2013.

¶ 8     On December 15, 2016, 5½ years after the loss, a jury found that defendant had breached the insurance contracts.  First, the jury found that defendant owed the remaining $18,643 that plaintiff had claimed for lost rental income.  Second, the jury found defendant liable for an additional $118,006 for the building loss, but that award was much less than the amount claimed.  Finally, the jury found that Szechwan Garden did not sustain damages under its policy, even though defendant had breached the contract.  Defendant paid the judgments entered on the verdicts on December 23, 2016, and did not appeal.

¶ 9                              B. Unreasonable and Vexatious Delay

¶ 10    Over two years, defendant voluntarily paid plaintiff $1,100,964 on its policy, and the timing and amounts of defendant's payments are not disputed.  Defendant's first payment, $76,000 for lost income and an advance on the rebuild, was made 48 days after the collapse.  Defendant paid an additional $100,000 for the building loss about four months after the loss.

¶ 11    Tim Erickson, one of defendant's claims-adjusters, was responsible for inspecting the building to estimate the scope of damages for purposes of processing the claims.  On December 16, 2011, plaintiff's counsel sent a letter to Erickson, stating, in part, "[d]espite repeated requests, we have not received direction from you, in your capacity as the claims adjuster for [defendant], regarding the process or settlement of this claim.  Furthermore, on several occasions you have cancelled appointments with the owner at the site of loss without any prior notice.  While my client has received payments from [defendant], there was no detailed explanation as to the allocation of payments, as they relate to the various coverage's [*sic*], nor a determination of

the overall claim amounts." Counsel informed defendant that plaintiff had retained an engineer. He also submitted a sworn statement of proof of loss to facilitate settlement of the claims.

¶ 12    On January 12, 2012, Daniel Slouka, one of defendant's adjusters, responded in part that "[a]t this time we are holding the submitted Proof of Loss in abeyance pending the completion of our investigation of the damages sustained to the building. However, please note that we are not in agreement with [the] claim as quantified in the Proof of Loss and accompanying estimates." Defendant requested copies of plaintiff's engineering report and architectural plans, but did not indicate when its investigation would be complete or why it was "not in agreement" with the proof-of-loss statement.

¶ 13    On February 14, 2012, plaintiff's counsel responded to Slouka, stating, in part, the following:

> "I am writing in regards to an apparent lack of direction, follow-through, and communications from your company regarding this claim, which has put my client in a difficult financial position, and in our opinion may give rise to a claim of Bad Faith processing of the claim.
>
> The property damage occurred on August 8, 2011. On August 23rd my client sent you a written request for direction on processing the claim and notice that he would start mitigating his damages by commencing demolition on August 26th. At the verbal request of your adjuster, my client did not start demolition, and an on-site meeting with my client and your adjuster was scheduled for September 9th. The adjuster failed to appear at the scheduled meeting. On September 16th I sent a letter demanding written acknowledgement of coverage and notice that my client would begin demolition on

September 19th. We received no response to these requests, and your claims adjuster also failed to appear at the next scheduled on-site meeting on October 13th.

While receiving no direction regarding the processing of this claim, pursuant to the policy, on December 17th, we submitted to [defendant] our Sworn Statement on Proof of Loss along with copies of the quotes we received from contractors. On January 12, 2012, you provided a response to our letter of [December] 17th indicating that you were holding our Proof of Loss in abeyance pending your investigation, and requesting that we provide a copy of our engineer's report within fourteen days (which was provided in the time frame demanded).

While we understand your duty to investigate the claim, we cannot understand the delay in your investigation. The loss occurred in early August, and it is now mid-February. There has been more than adequate time to complete your investigation. Pursuant to the policy conditions, we are requesting that you either accept or reject our proof of loss."

¶ 14    On March 12, 2012, seven months after the loss, plaintiff filed a complaint with the Illinois Department of Insurance, alleging late payment by defendant. A week later, defendant paid an additional $18,000 for business loss and $531,263 for building loss. The building loss payment contained a notation of "Balance ACV building," which the trial court interpreted to mean "actual cash value."

¶ 15    On June 28, 2012, Slouka responded by letter that plaintiff's proof-of-loss statement was being returned as premature because plaintiff had not completed the repairs or ascertained the final cost. Defendant also objected to plaintiff's proof-of-loss statement as excessive and not reflecting the true amount of damages as defendant believed them to be at the time. Defendant

directed plaintiff to give notice when the repairs were completed so defendant could conduct a final inspection and review the final expenses that plaintiff actually incurred.

¶ 16    Erickson admitted in a deposition that he stopped working on the matter in July 2012, without completing the inspection or estimate. Gerald Long, defendant's director of claims, confirmed in his deposition that Erickson's task was to inspect the property, determine the scope of the damage, and estimate the cost of repairs.

¶ 17    On November 9, 2012, plaintiff filed its original complaint, alleging improper claims practice (215 ILCS 5/154.6, 155 (West 2012)), violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2012)), and unreasonable and vexatious delay in settling the claims (215 ILCS 5/155 (West 2012)). The complaint alleged the causes of action on behalf of plaintiff and Szechwan Garden.

¶ 18    Defendant made its final pretrial payments of $366,489 and $9212 on June 4, 2013, which was 7 months after the original complaint, 1 year and 10 months after the loss, and 11 months after Szechwan Garden reopened for business.

¶ 19    On December 5, 2016, four years after the original complaint, plaintiff filed a third amended complaint, which substituted breach-of-contract claims for the consumer fraud claims. The jury found that defendant breached the contracts.

¶ 20    The third amended complaint also alleged that defendant engaged in unreasonable and vexatious conduct by (1) failing to promptly acknowledge plaintiff's pertinent communications with respect to the claims; (2) failing to adopt and implement reasonable standards for the prompt investigation and settlement of the claims; (3) not attempting in good faith to effectuate the prompt, fair, and equitable settlement of the claims, on which liability had become reasonably clear; (4) compelling plaintiff to sue to recover amounts due under its policy, by

offering substantially less than the amounts ultimately recovered; (5) failing to affirm or deny coverage of the claims within a reasonable time after the proof-of-loss statement was submitted; and (6) failing to pay undisputed amounts owed under the policy. Plaintiff requested a finding that defendant had committed unfair claims practices in an unreasonable and vexatious manner and a statutory penalty and attorney fees under section 155.

¶ 21    At the bench trial on the section 155 claims, Jim Radecki, a claims-adjusting expert for plaintiff, testified that defendant did not properly process the claims. He opined that Erickson's job was to prepare a damage estimate for the building and personal property, but that he failed to do so. Without a complete estimate, defendant could not calculate its liability, which resulted in breach of the contracts. In other words, the policy placed the burden of determining liability on defendant, but defendant improperly tried to shift the burden to plaintiff. Defendant did not present any expert testimony to rebut Radecki's characterization of the policy. Instead, defendant simply argued that the proof-of-loss statement prepared by plaintiff was excessive, and therefore a *bona fide* dispute precluded sanctions under section 155.

¶ 22    On March 24, 2017, the trial court entered judgment for plaintiff on its claims under section 155. The court found that plaintiff encountered unnecessary difficulties from defendant's withholding policy benefits.

¶ 23    The trial court cited the two letters from plaintiff's counsel on December 16, 2011, and February 14, 2012, asking defendant to complete its investigation for purposes of settling the building claims. The court also commented that plaintiff had to resort to filing a complaint with the Department of Insurance to compel defendant to either pay the amount requested or indicate an amount that was acceptable. The court concluded that the delay in settling the claims was vexatious because there was no *bona fide* dispute about coverage.

¶ 24    The court also credited plaintiff's argument that defendant's correspondence on January 12, 2012, and June 28, 2012, was evidence of improper claims practice under sections 154.6 and 155 of the Insurance Code (215 ILCS 5/154.6, 155 (West 2012)) and section 919.50(a)(1) of title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 919.50(a)(1) (2004)).  In the letters, defendant (1) informed plaintiff that its claims would be "held in abeyance" pending completion of defendant's inspection and (2) rejected plaintiff's proof of loss without providing a lower offer to adjudicate the claims.

¶ 25    Based on this evidence, the trial court found that defendant had engaged in unreasonable and vexatious delay in settling the claims.  The trial court awarded plaintiff $27,692 for "other costs," $48,784 for attorney fees, and $30,697 in penalties under section 155 of the Insurance Code.  The court also awarded $24,148 in prejudgment interest.  See 815 ILCS 205/2 (West 2012).  Defendant's timely appeal followed.

¶ 26                              II. ANALYSIS

¶ 27    On appeal, defendant challenges the trial court's finding of unreasonable and vexatious delay under section 155 of the Insurance Code.  Section 155 provides an extracontractual remedy to policyholders.  *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 159 (1999).  The statute provides that an insured may collect attorney fees and costs where an insurer creates a "vexatious and unreasonable" delay in settling a claim.  215 ILCS 5/155(1) (West 2012).

¶ 28    The court may award reasonable attorney fees, "other costs," and an amount not to exceed (1) 60% of the amount that the insured is entitled to recover on its claim, exclusive of costs; (2) $60,000; or (3) the excess of the amount that the insured is entitled to recover, exclusive of costs, over the amount, if any, that the insurer offered to pay in settlement of the

claim prior to the action. 215 ILCS 5/155(1) (West 2012). Defendant does not contest the court's calculation of attorney fees, "other costs," and penalties allowed under the statute.

¶ 29    A court should consider the totality of the circumstances when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 426 (2009).

¶ 30    Where a *bona fide* dispute concerning coverage exists, sanctions pursuant to section 155 are inappropriate. *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001). A *bona fide* dispute is one that is " '[r]eal, actual, genuine, and not feigned.' " *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 683 (2000) (quoting Black's Law Dictionary 177 (6th ed. 1990)). Where an insurer reasonably relies upon evidence sufficient to form a *bona fide* dispute, that insurer has not acted unreasonably or vexatiously under section 155. *Morris v. Auto-Owners Insurance Co.*, 239 Ill. App. 3d 500, 506 (1993).

¶ 31    The parties dispute our standard of review. Plaintiff cites the well-settled proposition that "[g]enerally, an abuse of discretion standard is utilized to review a circuit court's decision to award attorney fees and costs under section 155." *Employers Insurance of Wausau*, 186 Ill. 2d at 160. In contrast, defendant asks us to parse the judgment and use less deferential standards to review discrete findings. For example, the trial court found that no *bona fide* dispute precluded section 155 sanctions, and defendant advocates the manifest-weight-of-the-evidence standard for reviewing that finding. The court also found that certain communications by defendant did not comply with section 919.50 of title 50 of the Administrative Code, which defendant argues is subject to *de novo* review because the finding required an interpretation of the section.

¶ 32    While the ultimate decision to award sanctions under section 155 generally is reviewed for an abuse of discretion, our supreme court has explained that the underlying procedural posture should be considered when assessing the underlying facts supporting the award. In *Employers Insurance of Wausau*, the court applied the *de novo* standard when reviewing section 155 sanctions that were entered on a party's motion on the pleadings in a declaratory judgment action. *Employers Insurance of Wausau*, 186 Ill. 2d at 160; see also *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751-55 (1997) (applying *de novo* standard of review to a section 155 award made in a grant of summary judgment).

¶ 33    Consistent with this approach, the Appellate Court, First District, has viewed section 155 sanctions, which are discretionary, through the lens of the underlying fact finding. In *dicta*, the court observed that "[t]he question of whether any given behavior is vexatious and unreasonable is a question of fact (*Boyd v. United Farm Mutual Reinsurance Co.*, 231 Ill. App. 3d 992, 999 (1992)), which, in a bench trial, is subject to a manifest weight standard of review." *Buckner v. Causey*, 311 Ill. App. 3d 139, 150 (1999). However, the court observed that, by stating that a trial court "may" award relief under section 155, the legislature was signaling the intent to vest the trial court with discretion in awarding relief, which should not be reversed absent an abuse of that discretion. *Buckner*, 311 Ill. App. 3d at 150 (citing *Boyd*, 231 Ill. App. 3d at 1000).

¶ 34    Defendant's conduct in adjusting the claims involved facts decided following a bench trial, which are subject to the manifest-weight standard of review. However, most of the facts are not in dispute, because defendant did not present expert testimony to rebut plaintiff's expert. Accordingly, we simply review the trial court's ultimate decision to award relief under section 155 for an abuse of discretion.

¶ 35    We conclude that the trial court did not abuse its discretion in finding that defendant's delay in settling the claims was unreasonable and vexatious and worthy of sanctions under section 155.  When plaintiff submitted its statement of proof of loss, defendant held it in abeyance pending completion of its inspection, then rejected it as premature because the rebuild was not complete.  Less than a month later, defendant pulled Erickson, the adjuster, off the project without completing a final estimate of loss.

¶ 36    The trial court reasonably relied on the unrebutted testimony of plaintiff's expert, who opined that defendant should have completed the inspection and promptly adjusted the claims. Despite the parties' apparent disagreement over the cost of the project, the expert testified that it was incumbent on defendant to estimate the damages and propose a settlement amount, which is consistent with section 919.50.

¶ 37    Section 919.50 requires an insurer to affirm or deny liability on a claim within a reasonable time and to offer payment within 30 days after affirmation of liability, if the amount of the claim is determined and not in dispute.  For those portions of the claim that are not in dispute and for which the payee is known, the insurer shall tender payment within said 30 days. On first-party claims, if a settlement offer is less than the amount claimed, or if the claim is denied, the insurer shall provide to the insured a reasonable written explanation of the basis of the lower offer or denial within 30 days after the investigation and determination of liability is completed.  The explanation shall clearly set forth the policy definition, limitation, exclusion, or condition upon which the lower offer or denial was based.  50 Ill. Adm. Code 919.50(a)(1) (2004).

¶ 38    Under section 919.50, the parties' disagreement over plaintiff's proof-of-loss statement required defendant to provide a reasonable written explanation within 30 days after the

investigation and determination of liability was completed. 50 Ill. Adm. Code 919.50(a)(1) (2004). Defendant neither offered a written explanation for a denial nor completed the investigation and determination of liability. As the trial court correctly observed, evidence of such improper claims practices is relevant and tends to support a section 155 claim. *Zagorski v. Allstate Insurance Co.*, 2016 IL App (5th) 140056, ¶ 27.

¶ 39    Defendant insists that section 155 sanctions are inappropriate because there was a *bona fide* dispute over the scope of coverage and the reasonable cost of rebuilding. The trial court disagreed. The long duration of the negotiations, and defendant's stalling tactics that plagued them, support the court's conclusion that the delay was unreasonable and vexatious. If insurance claims were commonly handled as defendant did this one, an insured would be compelled to repair the damage without knowing the extent to which the insurer would cover the cost. Plaintiff's expert's opinion comports with common sense that an insurer owes a duty of good faith and fair dealing to provide an estimate so the insured can proceed knowing the scope of coverage.

¶ 40    Finally, we grant plaintiff's request, under section 155, for a remand for the trial court to assess and award reasonable attorney fees and costs that plaintiff incurred in defending the posttrial motion and this appeal. At oral argument, defendant objected to a remand for this purpose, but we conclude that plaintiff's request is reasonable.

¶ 41    The trial court heard the posttrial motion and therefore is in the best position to assess the reasonableness of the fees and costs incurred for that proceeding. Furthermore, when the appellate court determines that section 155 sanctions are appropriate, as in this case, a remand is appropriate for the trial court to determine and award litigation expenses associated with the appeal. See *Valdovinos v. Gallant Insurance*, 314 Ill. App. 3d 1018, 1023 (2000).

¶ 42                                    III. CONCLUSION

¶ 43    For the preceding reasons, we affirm the judgment of the circuit court of Kane County awarding sanctions under section 155 of the Insurance Code and remand the cause to award additional reasonable attorney fees and costs.

¶ 44    Affirmed and remanded.

¶ 45    JUSTICE McLAREN, specially concurring.

¶ 46    I agree with the outcome of the case. However, I disagree with the standard of review as to the trial court's finding that there was no *bona fide* dispute. I submit that the proper standard of review is whether the ruling was manifestly erroneous.[1]  " 'Manifestly erroneous means arbitrary, unreasonable and not based on the evidence.' "  *People v. Ballard*, 206 Ill. 2d 151, 162 (2002) (quoting *People v. Wells*, 182 Ill. 2d 471, 481 (1998)).

¶ 47    I base my conclusion on the fact that whether a *bona fide* dispute has been established is a mixed question of law and fact. A *bona fide* dispute is a legal concept embodied in a term of art. It is like other terms of art, such as probable cause, reasonable suspicion, voluntariness, seizure, bargaining in good faith, and others. To the extent that an element of an issue involves a term of art or constitutes a legal conclusion, the characterization of that element "might be viewed more precisely as a mixed question of fact and law." *Branson v. Department of Revenue*, 168 Ill. 2d 247, 265 (1995). As our supreme court has explained:

    "A mixed question of law and fact is one 'involv[ing] an examination of the legal effect of a given set of facts.' *City of Belvidere* [*v. Illinois State Labor Relations Board*], 181 Ill. 2d 191, 205 (1998)]. Stated another way, a mixed question is one 'in which the

    ---
    [1] As does caselaw, I use the phrases "manifestly erroneous" and "clearly erroneous" interchangeably.

- 13 -

historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' [Citations.]" *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391-92 (2001).

In another example, due diligence in all its aspects is a mixed question of law and fact. See *Dillman v. Nadelhoffer*, 160 Ill. 121, 128 (1895). A trial court's determination of whether a party has acted diligently is an objective one and is a " 'fact-intensive inquiry that is suited to balancing, not to bright lines.' " *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 324 (2010). "[A] mixed question of law and fact is reviewed under the clearly erroneous standard." *Eschbach v. McHenry Police Pension Board*, 2012 IL App (2d) 111179, ¶ 17 (citing *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006)); see also *Rockford Financial Systems, Inc.*, 403 Ill. App. 3d at 329 ("Considering due diligence in all its aspects, we determine that the trial court's ruling was neither manifestly erroneous nor an abuse of discretion.").

¶ 48    In general, our supreme court has limited its application of the "clearly erroneous" standard of review to "decisions of administrative agencies" involving "administrative decisions on mixed questions of fact and law." *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 542 (2007). "In all other civil cases, we review legal issues *de novo* and factual issues under a manifest weight of the evidence standard." *Id*.

¶ 49    However, our supreme court has clearly not prohibited the use of the "manifestly erroneous" standard of review in situations involving mixed questions of law and fact with regard to other scenarios, such as, for instance, third-stage postconviction proceedings. See *People v. English*, 2013 IL 112890, ¶ 23 ("After an evidentiary hearing where fact-finding and

credibility determinations are involved, the circuit court's decision will not be reversed unless it is manifestly erroneous."); see also *People v. Beaman*, 229 Ill. 2d 56, 72 (2008) ("Following an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous."). A postconviction proceeding is civil in nature. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). The "clearly erroneous" standard is also applied to the review of *Batson* claims. See *People v. Davis*, 233 Ill. 2d 244, 261 (2009). "Because a trial court's finding on the ultimate issue of discrimination rests largely on credibility determinations, it is entitled to great deference on review and will not be set aside unless clearly erroneous." *McDonnell v. McPartlin*, 192 Ill. 2d 505, 527 (2000). Of course, the *Batson* rule "applies with equal force to private litigants in civil cases." *Id.* at 526. Thus, I do not see the use of the "manifestly erroneous" standard in this case as inappropriate or prohibited.

¶ 50      The majority notes that, where a *bona fide* dispute concerning coverage exists, sanctions pursuant to section 155 are inappropriate. *Supra* ¶ 31. Thus, the inverse must also be true: where a *bona fide* dispute concerning coverage *does not* exist, sanctions pursuant to section 155 are *appropriate*. The trial court found that defendant's delay in settling the claims was unreasonable, vexatious, and worthy of sanctions under section 155. This clearly fits within the definition of a mixed question of law and fact. As we have established, "[A] mixed question of law and fact is reviewed under the clearly erroneous standard." *Eschbach*, 2012 IL App (2d) 111179, ¶ 17. The trial court's finding was made after an evidentiary hearing involving fact-finding and credibility determinations; a decision following such a hearing will not be reversed unless it is manifestly erroneous. *Beaman*, 229 Ill. 2d at 72. Applying the "manifestly erroneous" standard, I submit that the court's finding with regard to the lack of a *bona fide*

dispute was not arbitrary or unreasonable and was based on the evidence; thus, it was not manifestly erroneous.  I also submit that the nature and extent of the remedy provided, reviewed for an abuse of discretion, were not improper.